# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ZITOVAULT, LLC, | § | Civil Action No. 3:16-cv-00962-M |
| | § | |
| Plaintiff, | § | Judge Lynn |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| INTERNATIONAL BUSINESS MACHINES | § | |
| CORPORATION and SOFTLAYER | § | |
| TECHNOLOGIES, INC., | § | |
| | § | |
| Defendants. | § | |
| | § | |

# DEFENDANTS' MOTION TO STRIKE
# PLAINTIFF'S INFRINGEMENT CONTENTIONS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ....................................................................................................... 1

I.      RELEVANT FACTUAL BACKGROUND ......................................................... 2

ARGUMENT ............................................................................................................. 4

I.      LEGAL STANDARD .................................................................................... 4

II.     ZITOVAULT'S INFRINGEMENT CONTENTIONS DO NOT COMPLY WITH
        MISCELLANEOUS ORDER NO. 62 ............................................................... 7

        A.      ZitoVault Failed to Identify the Accused Instrumentalities as Specifically
                as Possible ..................................................................................... 8

        B.      ZitoVault's Claim Charts Do Not "Identify[] Specifically and in Detail
                Where Each Element of Each Asserted Claim Is Found Within Each
                Accused Instrumentality" .................................................................. 10

                1.      ZitoVault's contentions are comprised almost entirely of vague
                        screenshots with none of the required specificity. ................. 10

                2.      ZitoVault's contentions fail to address specific claim limitations. ........... 13

                3.      ZitoVault's contentions improperly "mix and match" products
                        rather than disclosing coherent infringement theories on a per-
                        product basis. ...................................................................... 14

                4.      ZitoVault has not provided claim charts for the vast majority of the
                        Accused Instrumentalities. ..................................................... 15

III.    THE COURT SHOULD STRIKE ZITOVAULT'S DEFICIENT
        CONTENTIONS FOR FAILURE TO COMPLY WITH MISCELLANEOUS
        ORDER NO. 62 ........................................................................................ 16

        A.      ZitoVault Has No Explanation for Delay, and Has Not Been Diligent in
                Providing or Supplementing Its Infringement Contentions ................... 17

        B.      Striking ZitoVault's Infringement Contentions Is the Appropriate Sanction ........ 19

        C.      Absent Striking ZitoVault's Infringement Contentions, There Is a
                Significant Risk of Unfair Prejudice to Defendants ............................. 20

        D.      ZitoVault's Failure to Provide Detailed Infringement Contentions Could
                Delay the Entire Case. ...................................................................... 21

IV.     IN THE ALTERNATIVE, ZITOVAULT SHOULD NOT BE ALLOWED TO
        ADD, CLARIFY, OR OTHERWISE SUPPLEMENT ITS DEFICIENT
        INFRINGEMENT CONTENTIONS AT ANY POINT GOING FORWARD ............... 21

CONCLUSION ......................................................................................................... 23

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

### <u>CASES</u>

*Bender v. Freescale Semiconductor, Inc.*,
  No. C 09-1156 PHJ MEJ, 2010 WL 1689465 (N.D. Cal. Apr. 26, 2010) ....................... 15

*Bender v. Infineon Techs. N. Am. Corp.*,
  No. C09-02112JW(HRL), 2010 WL 964197 (N.D. Cal. Mar. 16, 2010) ....................... 15

*Cap Co., Ltd. v. McAfee, Inc.*,
  No. 14-cv-05068-JD, 2015 WL 4734951 (N.D. Cal. Aug. 10, 2015) ............................. 14

*Comput. Acceleration Corp. v. Microsoft Corp.*,
  503 F. Supp. 2d 819 (E.D. Tex. 2007).......................................................... 5, 6, 7, 16, 20

*Connectel, LLC v. Cisco Sys., Inc.*,
  391 F. Supp. 2d 526 (E.D. Tex. 2005)............................................. 5, 6, 17, 18, 19, 20, 21

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*,
  No. 6:07-CV-559, 2009 WL 81874 (E.D. Tex. Jan. 12, 2009)................................ 7, 8, 17

*Digital Reg of Tex., LLC v. Adobe Sys. Inc.*,
  No. 12-cv-01971, 2013 WL 3361241 (N.D. Cal. July 3, 2013) ................................. 10, 17

*Droplets, Inc. v. Amazon.com, Inc.*,
  No. C12-03733, 2013 WL 1563256 (N.D. Cal. Apr. 12, 2013) ................................. 10, 17

*Fast Memory Erase, LLC v. Spansion, Inc.*,
  No. 3:08-CV0977-M, 2009 WL 4884091 (N.D. Tex. Dec. 16, 2009) ............................. 5

*General Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*,
  No. 3:10-CV-276-F, 2012 WL 9148157 (N.D. Tex. Feb. 10, 2012)................................. 4

*Global Sessions LP v. Travelocity.com LP*,
  No. 10-cv-671, 2012 WL 1903903 (E.D. Tex. May 25, 2012) ....................................... 15

*H-W Tech., L.C. v. Apple, Inc.*,
  No. 11-cv-651, 2012 WL 3650597 (N.D. Tex. Aug. 2, 2012) ............... 5, 6, 11, 16, 18, 20

*InterTrust Techs. Corp. v. Microsoft Corp.*,
  No. C 01-1640 SBA, 2003 WL 23120174 (N.D. Cal. Dec. 1, 2003) ................................. 8

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
  No. 13-cv-17, 2013 WL 5763738 (E.D. Tex. Aug. 5, 2013)............................................. 9

*Linex Techs., Inc. v. Belkin Int'l, Inc.*,
  628 F. Supp. 2d 703, 714 (E.D. Tex. 2008)..................................................................... 6

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006)...................................................................................... 4, 22

*Rapid Completions LLC v. Baker Hughes Inc.*,
    No. 6:15-cv-724, 2016 WL 3407688 (E.D. Tex. June 21, 2016) ..................................... 13

*Realtime Data, LLC v. Packeteer, Inc.*,
    No. 6:08-cv-144, 2009 WL 2590101 (E.D. Tex. Aug. 18, 2009)............................ 5, 6, 17

*Theranos, Inc. v. Fuisz Pharma LLC*,
    No. 11-CV-05236-YGR, 2012 WL 6000798 (N.D. Cal. Nov. 30, 2012)......................... 9

*UltimatePointer LLC v. Nintendo Co.*,
    Nos. 11-cv-496, 11-cv-571, 2013 WL 6253767 (E.D. Tex. Dec. 3, 2013) ....................... 6

## RULES AND REGULATIONS

Miscellaneous Order No. 62 ................................................................................................. *passim*

## <u>INTRODUCTION</u>

IBM and SoftLayer ("Defendants") respectfully move to strike Plaintiff ZitoVault's ("ZitoVault") Infringement Contentions because they fail to comply with Miscellaneous Order No. 62 ¶ 3-1 and do not put Defendants on notice of ZitoVault's infringement theories.  First, ZitoVault's infringement contentions give only an amorphous description of functionalities allegedly accused of infringement (*i.e.*, "the Accused Instrumentalities") and attempt to implicate hundreds of products that fall within Defendants' "Cloud," "Bluemix," and/or "SoftLayer" brands.  These allegations are a far cry from Miscellaneous Order No. 62 ¶ 3-1(a)(2)'s requirement that the "[t]he identification [of each accused instrumentality] must be as specific as possible" and "by name or model number."  Second, instead of disclosing infringement theories for each claim element of each asserted claim and for each accused instrumentality, ZitoVault's infringement contentions (i) parrot (*i.e.*, "copy and paste") claim language and screenshots from websites without any explanation or analysis specifying what portions of those screenshots are relevant to the asserted claim language or how they relate to ZitoVault's infringement theories; (ii) fail to include <u>any</u> allegations regarding certain claim elements aside from repeating the claim language; (iii) mix and match different products offered by Defendants without any explanation of how those products supposedly work together to infringe the asserted patent; and (iv) fail to chart numerous products that fall under ZitoVault's amorphous (and improper) definition of the "Accused Instrumentalities."  Vague, conclusory infringement contentions like this do not comply with Miscellaneous Order No. 62 ¶ 3-1(a)(3).

ZitoVault has been on notice of these deficiencies since March 2016 and has yet to correct them or agree that it will correct them in the future.  In an effort to avoid motion practice and move the case forward on the merits, Defendants even proposed that both sides agree to a

timeline for supplementing contentions. ZitoVault refused that proposal as well and instead threatened Defendants with its own motion to strike.[1]

Defendants, therefore, bring this motion to strike ZitoVault's Infringement Contentions because they fail to put Defendants' on meaningful notice of ZitoVault's infringement theories. In the alternative, Defendants request that the Court issue an order precluding ZitoVault from relying on any infringement theory or feature, component, product, service, offering, or process that is not expressly articulated in Exhibit A to ZitoVault's Infringement Contentions.

## I.    RELEVANT FACTUAL BACKGROUND

ZitoVault filed this lawsuit on October 16, 2015 in the Eastern District of Texas, accusing Defendants of infringing U.S. Patent No. 6,484,257 ("the '257 patent"). (D.I. 1.) On November 30, 2015, Defendants moved to dismiss ZitoVault's allegations of willful infringement; that motion still is pending before the Court. (D.I. 22.) On February 8, 2016, ZitoVault served its P.R. 3-1 and 3-2[2] Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions" or "contentions"). (D.I. 26.) On March 11, 2016, Defendants filed an unopposed motion to change venue to the Northern District of Texas. (D.I. 36.) On March 16, 2016, the Eastern District of Texas granted Defendants' motion to change venue. (D.I. 41.) The case was transferred on April 7, 2016. (D.I. 42.) On April 15, 2016, the Patent Trial and Appeal Board instituted *inter partes* review (IPR) of ZitoVault's '257 patent, and on July 13, 2016, the Court stayed the case pending that IPR. (D.I. 60.) Following completion of the IPR, the Court lifted the stay (D.I. 65) and entered a schedule (D.I. 73).

---

[1]  In an apparent effort to retaliate against Defendants' legitimate complaints, before the stay ZitoVault contended that Defendants' invalidity contentions were deficient. ZitoVault has not raised any similar complaints post-stay.
[2]  P.R. 3-1 and 3-2 of the Eastern District of Texas's Patent Rules generally correspond to Miscellaneous Order No. 62 ¶¶ 3-1 and 3-2.

On March 2, 2016, Defendants first wrote to ZitoVault explaining that its Infringement Contentions failed to put Defendants on notice of ZitoVault's infringement theories as required by the applicable rules. (App. 0002-0008 (McKee 3/2/2016 Letter).) In that March 2 letter, Defendants asked ZitoVault to supplement its contentions to provide the required level of specificity set forth by Patent Local Rule 3-1 of the Eastern District of Texas (where the case was pending at the time). (App. 0002 (McKee 3/2/2016 Letter at 1).) ZitoVault responded three weeks later, informing Defendants that ZitoVault would not supplement its deficient contentions. (App. 0010 (Hamad 3/22/2016 Letter at 1).) On April 8, 2016, Defendants reiterated its concerns that ZitoVault's contentions were deficient and that ZitoVault's refusal to supplement its contentions with information sufficient to place Defendants on notice of ZitoVault's infringement theories was impeding Defendants' discovery efforts. (App. 0017 (McKee 4/8/2016 Letter at 1).) ZitoVault responded almost six weeks later, refusing to compromise in any way and contending that its "contentions and claim charts are sufficient." (App. 0028 (McManis 5/19/2016 Letter at 2).)

In an effort to move discovery forward and—again—to seek a compromise with ZitoVault to avoid motion practice, the parties met and conferred on May 27, 2016. On that meet and confer, rather than reiterate all of Defendants' complaints about ZitoVault Infringement Contentions (which Defendants had detailed in various letters), Defendants raised a select number of issues in an attempt to meaningfully streamline the discovery process in light of ZitoVault's deficient contentions. Specifically, Defendants asked whether ZitoVault would agree to supplement its contentions at any point before expert reports (ZitoVault said it would not); whether ZitoVault would consider a mutual, staggered supplementation of contentions by both sides (ZitoVault declined that offer too); and whether ZitoVault would at least provide a

3

more specific list of the accused products to help Defendants respond to ZitoVault's Rule 30(b)(6) Notices, which included over 150 topics.  (App. 0031 (Holmes 6/17/2016 Letter at 1).)  ZitoVault agreed to look into identifying a specific list of accused products and services (App. 0032 (Holmes 6/17/2016 Letter at 2)), but when Defendants followed-up ZitoVault conditioned this list on a requirement that Defendants first identify all products containing "the functionalities at issue" (App. 0035 (Hamad 6/22/2016 Email)).  On July 13, 2016, as Defendants were preparing to move to strike the Infringement Contentions, the case was stayed.

On June 22, 2017, after the stay was lifted, the parties met and conferred again regarding ZitoVault's deficient Infringement Contentions.  Defendants reiterated that ZitoVault had failed to address the deficiencies first identified in Defendants' March 3, 2016 letter.  ZitoVault maintained its refusal to amend its Infringement Contentions, and the parties reached an impasse.

## ARGUMENT

### I.   LEGAL STANDARD

Miscellaneous Order No. 62 ¶ 3.1 governs the level of detail patent infringement contentions must provide in this District.  Its requirements are similar to the patent local rules in the Eastern District of Texas as well as a number of other districts.  These local patent rules exist to encourage early disclosure of the parties' theories to focus the case.  *See, e.g.*, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (local patent rules are "designed specifically to 'require parties to crystallize their theories of the case early in the litigation' so as to 'prevent the "shifting sands" approach to claim construction.'") (citation omitted); *General Elec. Co. v. Mitsubishi Heavy Indus., Ltd.*, No. 3:10-CV-276-F, 2012 WL 9148157, at *2 (N.D. Tex. Feb. 10, 2012) ("Infringement contentions must provide 'particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by mere language of the patent rules themselves.'")

4

(citation omitted); *H-W Tech., L.C. v. Apple, Inc.*, No. 11-cv-651, 2012 WL 3650597, at \*4, 7 (N.D. Tex. Aug. 2, 2012) (Ramirez, M.J.) ("The purpose of preliminary infringement contentions is to provide notice of the accusing party's specific theories of infringement.") (quoting *Fast Memory Erase, LLC v. Spansion, Inc.*, No. 3:08-CV0977-M, 2009 WL 4884091, at \*2 (N.D. Tex. Dec. 16, 2009) (Kaplan, M.J.)); *Comput. Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007) ("The local patent rules 'exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigation their cases, not to create supposed loopholes through which parties may practice litigation by ambush.'") (citation omitted).

Miscellaneous Order No. 62 requires disclosure of infringement contentions shortly after the initial case management conference, indicating a presumption that the patent owner has conducted a pre-filing investigation before initiating the case and has already identified its infringement theories. *See, e.g.*, *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527-28 (E.D. Tex. 2005) ("The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions before discovery has even begun.'. . . . Plaintiffs are expected to rigorously analyze all publicly available information before bringing suit and must explain with great detail their theories of infringement."); *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101, at \*5 (E.D. Tex. Aug. 18, 2009) (finding that plaintiff had failed to meet "the burden imparted by Patent Rule 3-1"). These detailed, coherent disclosures help to focus all other aspects of the case. *See Connectel*, 391 F. Supp. 2d at 527 ("However, when parties formulate, test, and crystallize their infringement theories before stating their preliminary infringement contentions, as the Patent Rules require, the case takes a clear path, focusing discovery on building precise

final infringement or invalidity contentions and narrowing issues for *Markman*, summary judgment, trial, and beyond.").

Under Paragraph 3-1(a)(3) of Miscellaneous Order No. 62, patentees must produce a "chart identifying specifically and in detail where <u>each</u> element of <u>each</u> asserted claim is found within <u>each</u> Accused Instrumentality."   Miscellaneous Order No. 62 ¶ 3-1(a)(3) (emphasis added).   The chart "must particularly point to the portion of the Accused Product which is asserted to perform the function described in each claim limitation" such that defendants have "adequate notice and information with which to litigate their cases." *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 706, 714 (E.D. Tex. 2008); *see also H-W Tech.*, 2012 WL 3650597, at *2.   Patentees are also required to be "as specific as possible" in identifying the accused products.  Miscellaneous Order No. 62 ¶ 3-1(a)(2).  Infringement contentions "must be reasonably precise and detailed . . . to provide a defendant with adequate notice of the plaintiff's theories of infringement." *UltimatePointer LLC v. Nintendo Co.*, Nos. 11-cv-496, 11-cv-571, 2013 WL 6253767, at *2 (E.D. Tex. Dec. 3, 2013) (quoting *Realtime Data*, 2009 WL 2590101, at *5); *see also Comput. Acceleration*, 503 F. Supp. 2d at 822 (the Patent Rules are meant to "provide all parties with adequate notice and information with which to litigate their cases").

Infringement contentions must be detailed and provide notice beyond that which is provided by the language of the claims themselves. *See Connectel*, 391 F. Supp. 2d at 527-28 ("PICs providing vague, conclusory language or simply mimicking the language of the claims when identifying infringement fail to comply with Patent Rule 3-1.").   Failure to provide specific infringement contentions prejudices the alleged infringer in the preparation of its case. *See id.* at 528 ("Because of these deficiencies, [the alleged infringer] is unable to crystalize its non-

infringement and invalidity theories, and the parties are hindered in identifying what claim terms need construction.").

Courts have equated motions to strike infringement contentions with "whether evidence should be excluded for discovery violations," "whether the pleading deadlines" should be extended, and "whether to allow a party to supplement infringement contentions." *See Comput. Acceleration*, 503 F. Supp. 2d at 822 ("Deciding whether infringement contentions should be struck is similar to deciding whether evidence should be excluded for discovery violations. It is also akin to deciding whether the pleading deadlines of a scheduling order should be extended."); *David-Lynch, Inc. v. Weatherford Int'l, Inc.*, No. 6:07-CV-559, 2009 WL 81874, at *3 (E.D. Tex. Jan. 12, 2009) ("The tests for determining whether to allow a party to supplement infringement contentions and for determining whether to strike infringement contentions are essentially the same."). In deciding a motion to strike infringement contentions, courts consider a number of factors, including "(1) the reason for the delay and whether the party has been diligent; (2) the importance of what the court is excluding and the availability of lesser sanctions; (3) the danger of unfair prejudice; and (4) the availability of a continuance and the potential impact of a delay on judicial proceedings." *Davis-Lynch*, 2009 WL 81874, at *3; *see also Comput. Acceleration*, 503 F. Supp. 2d at 822.

## II.   ZITOVAULT'S INFRINGEMENT CONTENTIONS DO NOT COMPLY WITH MISCELLANEOUS ORDER NO. 62

ZitoVault's Infringement Contentions fail to comply with Miscellaneous Order No. 62 for at least two reasons: First, ZitoVault failed to make an identification of the Accused Instrumentalities that is "as specific as possible." Second, ZitoVault's contentions do not "identify[] specifically and in detail where each element of each asserted claim is found within

each accused instrumentality." ZitoVault's contentions should be struck for each independent deficiency.

A. **ZitoVault Failed to Identify the Accused Instrumentalities as Specifically as Possible**

Miscellaneous Order No. 62 requires patent plaintiffs to be "as specific as possible" in identifying accused products. ¶ 3-1(a)(2). ZitoVault's contentions fall far short. Instead of being specific, ZitoVault has accused broad concepts and functionality (*e.g.*, cloud computing using encryption and scalability), which fails to put Defendants on notice of the products/services that are actually accused of infringement. *See id.*; *see also InterTrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640 SBA, 2003 WL 23120174, at *2 (N.D. Cal. Dec. 1, 2003) ("InterTrust's Disclosures do not comport with the spirit of the Patent Local Rules" because InterTrust "has identified Microsoft's allegedly infringing software by their function, rather than the product name" and "has also failed to name the version number of the software program that allegedly infringes (e.g. Microsoft Windows 2.0, Microsoft Windows 2.1).").

In the cover document of its Infringement Contentions, ZitoVault alleges that "at least" certain broad swaths of cloud-based technology infringe its patent:

> Pursuant to P.R. 3-1(b), ZitoVault asserts that the asserted claims of the patent-in-suit are infringed by IBM by at least the following: (i) IBM's cloud computing products and services (including IBM Cloud, IBM SoftLayer, and IBM Bluemix services and hardware and software products); and (ii) resources hosted on IBM's cloud computing services (including ibm.com, softlayer.com, console.ng.bluemix.net, knowledgelayer.softlayer.com, ibm.com/developerworks, blog.softlayer.com) that use cryptographic sessions (including encrypted communication sessions, VPNs, IPSec, and/or SSL/TLS) and scalability features of IBM's cloud computing services (including IBM Cloud, IBM SoftLayer, and IBM Bluemix services and hardware and software products) (collectively referred to as the "Accused Instrumentalities").

(App. 0080-0081 (Cover Pleadings to ZitoVault's Infringement Contentions at 2-3).) Given its breadth and lack of specificity, this type of allegation is problematic—it shifts the burden to Defendants to identify the accused products and services. "IBM's cloud-computing products,"

8

and even the allegedly narrower "IBM Cloud, IBM SoftLayer, and IBM Bluemix," is expansive, vague, and would appear to include all IBM cloud-related products. There are hundreds of products and offerings whose names and descriptions are publicly available on IBM's cloud marketplace that could possibly be classified as "IBM's cloud-computing products." (App. 0037-0040 (IBM Marketplace webpage, providing information on 342 different "Cloud" products/services).) But the vast majority of those products do not appear to be implicated by ZitoVault's infringement chart on its face. ZitoVault's contentions, therefore, improperly place the burden on Defendants to determine which products and services ZitoVault may elect to accuse of infringement. That "tactic" is improper and should be rejected here. *See Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-CV-05236-YGR, 2012 WL 6000798, at *6 (N.D. Cal. Nov. 30, 2012) ("By arguing that Theranos' information is not publicly-available and by offering to amend the Contentions only after discovery has occurred, Fuisz is attempting to ignore their obligations and shift the burden to Theranos. Such tactic is improper.").

There is no justification for ZitoVault's burden-shifting tactic either. Although ZitoVault claims that Defendants' website "merely lists different sub-services available through the use of the IBM Cloud platform" and therefore Defendants should investigate what products they believe are relevant to the case and provide that information to ZitoVault (App. 0011 (Hamad 3/22/2016 Letter at 2)), that approach makes no sense. ZitoVault—not Defendants—filed this lawsuit and bears the burden of identifying the accused products and services. Patent rules, such as Miscellaneous Order No. 62, are specifically intended to foreclose this sort of "catch-all" identification of accused products and burden shifting. *See Keranos, LLC v. Silicon Storage Tech., Inc.*, No. 13-cv-17, 2013 WL 5763738, at *3 (E.D. Tex. Aug. 5, 2013) (denying plaintiff's motion for leave to amend infringement contentions, stating, "Plaintiff chose to list a handful of

exemplar products and then demand that Defendants disclose additional products. But the burden is on Plaintiff, not Defendants, to search for and identify infringing products to the extent possible based on publically available information.").  While Defendants have, in good faith, attempted to understand ZitoVault's infringement allegations and produced confidential technical information—including source code underlying the SoftLayer and Bluemix platforms—that does not mean that ZitoVault's contentions comply with Miscellaneous Order No. 62.  Nor does it mean that ZitoVault should be given a free pass to shift its burden of identifying the accused products and services in a manner that is "as specific as possible." Miscellaneous Order No. 62 ¶ 3-1(a)(2).

### B.     ZitoVault's Claim Charts Do Not "Identify[] Specifically and in Detail Where Each Element of Each Asserted Claim Is Found Within Each Accused Instrumentality"

Miscellaneous Order 62 ¶ 3-1(a)(3) requires a "chart identifying specifically and in detail where each element of each asserted claim is found within each accused instrumentality."  For at least four reasons, ZitoVault's Infringement Contentions come nowhere close to complying with this rule.

#### 1.     ZitoVault's contentions are comprised almost entirely of vague screenshots with none of the required specificity.

First, ZitoVault's Infringement Contentions are deficient because they "incorporate[] screen shots in lieu of explanatory text," such that Defendants must "guess what particular system (or aspect of a particular system) [plaintiff] is accusing of meeting each limitation." *Digital Reg of Tex., LLC v. Adobe Sys. Inc.*, No. 12-cv-01971, 2013 WL 3361241, at *3-4 (N.D. Cal. July 3, 2013); *see also Droplets, Inc. v. Amazon.com, Inc.*, No. C12-03733, 2013 WL 1563256, at *3-5 (N.D. Cal. Apr. 12, 2013) (holding that infringement contentions comprised of screenshots for each limitation "fail to provide the factual basis of the [patentee's] contentions"

10

without an explanation as to "which language from the claim limitations corresponds to the selected . . . screen shots"); *H-W Tech.*, 2012 WL 3650597, at *5 (finding that a "claim chart [that] recites language from the claims at issue and provides corresponding images with some textual explanations[] still falls short of 'identifying specifically and in detail where each element of each asserted claim is found within each accused instrumentality.'") (citation omitted).  This problem is not limited to one or two claim elements—the vast majority of ZitoVault's 1,094 pages of claim chart contain <u>only</u> unannotated screenshots of the same 31 webpages or documents, rendering the totality of ZitoVault's contentions deficient.  (App. 0085-1178 (Ex. A to ZitoVault's Infringement Contentions).)   ZitoVault then presents various permutations of some or all of these 31 webpages or documents for all elements of the asserted claims, again without annotating them or otherwise indicating which portions of each webpage are relevant to that particular claim element.  (*See* App. 0042-0075 (Attachment II.B.1).)

The screenshots used by ZitoVault corresponding to the following limitation are illustrative of these deficiencies: "the agents comprising a single-to-many connection (1 client, M agents) with respect to the clients, such that portions of the bandwidth are equally divided among the M agents for processing, and the agents combine the processing power of all computers connected to the system to service encryption and decryption and enable bandwidth to be scalable by the M agents and to reduce latency substantially to zero."  The screenshots are a random assortment of images from different sources, different products, and different companies including, for example, a figure from an IBM Redbook, screenshots from softlayer.com, screenshots from techtarget.com, screenshots from ibm.com, and screenshots from bluemix.net, without analysis or explanation.   (App. 0241-0262 (Ex. A to ZitoVault's Infringement Contentions at 157-178).)  Two exemplary screenshots for this limitation are provided below:

## Secure Gateway overview

The Secure Gateway service provides you with a secure way to access your on-premises or cloud data from your Bluemix application through a secure passage. As displayed in the following diagram, the service works by using a client to connect to your Bluemix organization. Next, you add the service to your Bluemix organization. Then, by using the Secure Gateway UI or REST API you can begin creating your gateway by connecting to your client and creating a destination point to your on-premises or cloud data. To increase security, you can add application-side TLS, which encrypts the data that travels from your app to the client. You can extend this security with client-side TLS, which encrypts the data from the client to the on-premises or cloud data. When you complete your gateway configuration, you can monitor the behavior of your gateways and destinations in the Secure Gateway Dashboard.



(App. 0248 (Ex. A to ZitoVault's Infringement Contentions at 164).)

# Load Balancing
### Let your servers share the load.

Distribute traffic loads so that no single device gets overwhelmed. SoftLayer load balancing solutions allow configurability and flexibility to manage the traffic and resource usage of server nodes in your environment.

Local, global, and high availability options can be activated, changed, and deactivated at any time. And if you have questions about which load balancing solution is a best fit for your application, our experts have answers.


**Better Uptime**
Mitigate traffic spikes by distributing load, and protect your servers from unnecessary downtime.


**More Responsive**
Balance traffic between available resources so end users do not face traffic jams and slow downs.


**Easy to Use**
Manage load balancer configuration and performance directly through SoftLayer API and Web portal.

(App. 0257 (Ex. A to ZitoVault's Infringement Contentions at 173).)  As is readily apparent, these screenshots fail to identify with any specificity the features or functionalities ZitoVault contends support its infringement theories for each claim element.  There is no highlighting, underlining, or other annotation that specifies, for example, what the "single-to-many connection (1 client, M agents) with respect to the clients" is alleged to be or how "portions of the

12

bandwidth are equally divided among [] M agents" or even how the Accused Instrumentalities allegedly "enable bandwidth to be scalable by the M agents to reduce latency substantially to zero" in these screenshots.  ZitoVault's repetition of the claim language (App. 0241 (Ex. A to ZitoVault's Infringement Contentions at 157)) and generic description of load balancing that is divorced from the claim element (App. 0256-0257 (Ex. A to ZitoVault's Infringement Contentions at 172-3)) do not cure this deficiency.  Instead, Defendants are left to guess.

This, of course, is just one example from one limitation.  ZitoVault's contentions are filled with similar non-specific screenshots from various different websites and documents with no analysis or explanation that even seriously attempt to put Defendants on notice of ZitoVault's infringement theories on a per-claim element and per-product basis.  (App. 0085-1178 (Ex. A to ZitoVault's Infringement Contentions).)   ZitoVault's contentions therefore fail to "identify[] specifically and in detail" each accused element in each accused instrumentality, and should be struck.

>        2.      ZitoVault's contentions fail to address specific claim limitations.

ZitoVault's contentions also are inadequate because they do not address certain claim limitations at all, leaving Defendants without any information about ZitoVault's infringement theories for those limitations.  *See Rapid Completions LLC v. Baker Hughes Inc.*, No. 6:15-cv-724, 2016 WL 3407688, at *4 (E.D. Tex. June 21, 2016) (finding infringement charts containing diagrams were deficient "[t]o extent that [they] do[] not identify each element of each asserted claim in the diagrams").  As an example, claim 5 requires a main server that "passes [a] session key to [an] alternate agent server."  ZitoVault's claim chart alleges that "session keys may relate to SSL, TLS, or HTTPS connections between agents" and that the "Accused Instrumentalities provide for encryption and decryption mechanisms such as SSL, TLS, HTTPS, etc."  (App. 0482 (Ex. A to ZitoVault's Infringement Contentions at 398).)  But the contentions <u>never</u> identify or

13

analyze any feature of an accused instrumentality—not even within one of ZitoVault's numerous screen shots—that might amount to "pass[ing]" a session key, as required by the claims.  (App. 0536 (Ex. A to ZitoVault's Infringement Contentions 398-452).)  There simply are no allegations for that limitation.  And Defendants therefore have no information about ZitoVault's infringement theory for this particular element, which renders the contentions deficient. Additional examples of similar deficiencies have been provided in App. 0077 (Attachment II.B.2), which accompanies this motion, each of which renders the contentions similarly deficient.

### 3.   ZitoVault's contentions improperly "mix and match" products rather than disclosing coherent infringement theories on a per-product basis.

ZitoVault's contentions also are deficient because the screenshots are comprised of a mix-and-match of separate products and offerings.  In other words, ZitoVault never charted a single product/service on its own; instead, it pasted a mixture of screenshots from various products/service together without explaining how they relate to specific infringement theories on a per-product/service basis.  Defendants are, therefore, left guessing whether ZitoVault alleges that each product/service infringes a claim or if ZitoVault, or whether ZitoVault alleges that some unspecified combinations of these products/services infringes that claim.  This is improper. *See Cap Co., Ltd. v. McAfee, Inc.*, No. 14-cv-05068-JD, 2015 WL 4734951, at *2 (N.D. Cal. Aug. 10, 2015) (striking infringement contentions because "[i]nfringement cannot be shown by a muddled hash of elements from different products, since in order to infringe, the accused device must contain each limitation of the claim, either literally or by equivalent.") (quotation omitted).

For example, for the "M agents communicating with the main server for enlisting additional agents" limitation of claim 1, ZitoVault's infringement contentions include screenshots relating to a variety of separate and different products: SoftLayer's API, SoftLayer's

Auto Scale, SoftLayer's Load Balancing, Bluemix's Autoscaling, SoftLayer's SSL Certificates, SoftLayer's SSL Offloading, SoftLayer's Firewalls, IBM Cloud Data Encryption Services, IBM DataPower, and Bluemix's Secure Gateway.   (*See* App. 0177-0229 (Ex. A to ZitoVault's Infringement Contentions at 93-145).)   None of these products are charted individually, and ZitoVault's contentions fail to identify which combinations of these products can allegedly comprise the claimed "agents" and "main server," much less how components and features from such disparate products supposedly operate together to practice this limitation in claim 1. ZitoVault's contentions thus allege (for example) that the agents can be "load balancers," which includes SoftLayer's Load Balancing products, while the main server can be an "auto-scaler," which includes Bluemix's Auto-Scaling product, without any explanation of how a Bluemix "auto-scaler" could possibly enlist additional SoftLayer "load balancers" (it cannot).   (*See* App. 0177, 0198-0199, 0213 (Ex. A to ZitoVault's Infringement Contentions at 93, 114-15, 129).) The contentions therefore fail to disclose how "<u>each element</u> of each asserted claim is found <u>within each Accused Instrumentality</u>." (Miscellaneous Order No. 62 ¶ 3-1(a)(3) (emphasis added)).

4.    <u>ZitoVault has not provided claim charts for the vast majority of the Accused Instrumentalities.</u>

Fourth, ZitoVault was required to provide separate charts for each Accused Instrumentality unless ZitoVault could "articulate[] how the accused products share the same, or substantially the same, infringing [feature] with any other product."  *Bender v. Freescale Semiconductor, Inc.*, No. C 09-1156 PHJ MEJ, 2010 WL 1689465, at *3 (N.D. Cal. Apr. 26, 2010); *see also Bender v. Infineon Techs. N. Am. Corp.*, No. C09-02112JW (HRL), 2010 WL 964197, at *2 (N.D. Cal. Mar. 16, 2010) (holding that plaintiff did not make requisite "showing that his use of 'representative' claim charts is proper," because "[o]ther than plaintiff's bare

assertion, there is nothing in the record. . . ."); *Global Sessions LP v. Travelocity.com LP*, No. 10-cv-671, 2012 WL 1903903, at *7 (E.D. Tex. May 25, 2012) ("Simply charting www.amazon.com as a representative example to illustrate specific theories of infringement for multiple websites is insufficient . . . ."). ZitoVault never made the required articulation.

Defendants have numerous products that relate to "cloud computing" and could be considered "IBM Cloud," "IBM SoftLayer," or "IBM Bluemix" products. These products thus fall within ZitoVault's amorphous definition of the "Accused Instrumentalities," yet the vast majority of them are not even mentioned in ZitoVault's claim chart.[3] Instead, ZitoVault has provided only a bare assertion that its Infringement Contentions "are representative of the functionality, operation, and capabilities of the Accused Instrumentalities." (App. 0085 (Ex. A to ZitoVault's Infringement Contentions at 1 n.1).) But ZitoVault's Infringement Contentions do not explain, or even allege, that each product or service that could be considered an "Accused Instrumentalit[y]" shares the same allegedly infringing features, as required. The Infringement Contentions are, therefore, deficient for this reason as well.

### III.   THE COURT SHOULD STRIKE ZITOVAULT'S DEFICIENT CONTENTIONS FOR FAILURE TO COMPLY WITH MISCELLANEOUS ORDER NO. 62

All four factors courts consider when deciding motions to strike infringement contentions weigh in favor of striking ZitoVault's deficient contentions. *See H-W Tech.*, 2012 WL 3650597 at *6 (citing *Comput. Acceleration*, 503 F. Supp. 2d at 822).

---

[3]   For example, the IBM Cloud Marketplace identifies 342 products/services, whereas ZitoVault's claim chart consists of various combinations of screenshots from 31 different webpages or documents. (App. 0037-0040 (IBM Marketplace webpage, providing information on 342 different "Cloud" products/services).) Even assuming that ZitoVault's definition of "Accused Instrumentalities" is limited to those identified in the IBM Marketplace as "Cloud" products/services (which is unlikely given the vagueness of ZtioVault's definition) and that each screenshot relates to a different product (which is not the case), ZitoVault has failed to even mention more than 90% of the "Accused Instrumentalities" in its claim chart, much less provide a separate claim chart for each of these products identifying where each element of each claim is found, as required by Miscellaneous Order No. 62.

A.   **ZitoVault Has No Explanation for Delay, and Has Not Been Diligent in Providing or Supplementing Its Infringement Contentions**

ZitoVault has no explanation for its failure to provide adequate infringement contentions by the Court's deadline, and every indication is that ZitoVault has not been diligent in either its pre-filing investigation or its investigation since initiating this case.   Even before filing the Complaint, ZitoVault was expected to conduct a pre-filing investigation and identify its infringement theories.   *See, e.g., Connectel*, 391 F. Supp. 2d at 527-28 ("The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions before discovery has even begun.'. . . .   Plaintiffs are expected to rigorously analyze all publicly available information before bringing suit and must explain with great detail their theories of infringement.") (citation omitted).   ZitoVault was obligated to research each accused product/service, determine how and why each product/service allegedly infringed, and prepare a cogent infringement theory on a product-by-product (or service-by-service) basis.   But ZitoVault has failed to do so.   Not only are ZitoVault's Infringement Contentions inadequate, the reasonableness of ZitoVault's pre-filing investigation is thus questionable.   *See Realtime Data*, 2009 WL 2590101, at *9; *Davis-Lynch*, 2009 WL 81874, at *2; *Connectel*, 391 F. Supp. 2d at 527-28.

Moreover, ZitoVault's refusal to supplement its contentions to bring them into accordance with Miscellaneous Order No. 62 is unexcused.   ZitoVault could have, but chose not to, point out, highlight, or annotate specific portions of those documents it intends to rely on to explain its theories.   It could have, but chose not to, explain how the figures cited in its Infringement Contentions allegedly meet the recited limitations.   It could have, but chose not to, explain the relationship between, and the relevance of, the different product offerings depicted in the screenshots. *See Digital Reg*, 2013 WL 3361241, at *4; *Droplets*, 2013 WL 1563256, at *3-

17

5.  Defendants, in fact, asked ZitoVault to make those corrections over and over again, and even proposed a compromise where both parties would amend contentions.  ZitoVault refused, and therefore cannot claim ignorance or lack of opportunity to amend.

Finally, ZitoVault's failure to explain how it contends Defendants practice each limitation of the asserted claims is not excused by the fact that ZitoVault did not initially have access to Defendants' confidential technical documentation.  *See*, *e.g.*, *Connectel*, 391 F. Supp. 2d at 527-28 ("'The Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit, requiring plaintiffs to disclose their preliminary infringement contentions before discovery has even begun.' . . . Plaintiffs are expected to rigorously analyze all publicly available information before bringing suit and must explain with great detail their theories of infringement.") (citation omitted).  Even if ZitoVault's contentions were reasonably justified at the outset of the case, Defendants have since produced source code (of which ZitoVault has printed more than 1,000 pages) and a large volume of technical documents.[4]  Even excluding the time this case was stayed, ZitoVault has had access to source code and Defendants' confidential technical documents for many months.[5]  Thus, ZitoVault cannot complain that it needs access to confidential information to remedy its deficient disclosure.  *See H-W Tech.*, 2012 WL 3650597,

---

[4]  ZitoVault's failure to timely provide adequate infringement is also not saved by the Discovery Order's introduction of "P.R. 3-1(g)," which indicates that, for each "software limitation," "the party claiming patent infringement shall identify, on an element-by-element basis for each asserted claim, what source code of each Asserted Instrumentality allegedly satisfies the software limitations of the asserted claim elements."  (D.I. 34 ¶ 3(a).)  Despite having access to Defendants' source code since April 4, 2016, ZitoVault has not amended its contentions to comply with this rule.

[5]  The fact that the case was stayed for a year and that Defendants intend to produce additional technical documents that may have been generated during the stay has no bearing on the outcome of this Motion.  ZitoVault refused to supplement its infringement contentions before the stay and reiterated that refusal after the stay.  Accordingly, absent Court intervention, ZitoVault will not be serving adequate infringement contentions regardless of how many documents Defendants produce or how much source code they make available for inspection.

at *6 (finding the first factor weighed in favor of striking infringement contentions where "Plaintiff has not expressed any reasons for [its] failure [to specifically identify accused instrumentalities, and does not argue that it did not have sufficient information to provide a timely claim chart based on the omitted instrumentality"); *see also supra* at Section II.A.

### B.     Striking ZitoVault's Infringement Contentions Is the Appropriate Sanction

Miscellaneous Order No. 62 ¶ 3-1(b) specifically recognizes the importance of detailed infringement contentions and provides the possibility of serious sanctions for failing to comply, including dismissal.   The expectation is that ZitoVault conducted a reasonable pre-filing investigation and, in the process, formulated its infringement theories.   In its Infringement Contentions, ZitoVault should therefore be able to put forth coherent explanations of its infringement theories.   ZitoVault's failure to do so suggests that ZitoVault initiated this case without a coherent infringement theory.   Defendants should not have to defend themselves in a patent case and be put through the expense and burden of discovery, invalidity contentions, claim construction, summary judgment motions, and potentially trial in instances where the plaintiff has not disclosed a coherent infringement theory.   *See Connectel*, 391 F. Supp. 2d at 528 ("Because of these deficiencies, [the alleged infringer] is unable to crystallize its non-infringement and invalidity theories, and the parties are hindered in identifying what claim terms need construction.").

Moreover, while the decision whether to strike ZitoVault's Infringement Contentions lies within the discretion of the Court, doing so is the most appropriate remedy because ZitoVault has refused Defendants' repeated requests for supplementation (and even refused multiple offers of mutual supplementation).   Indeed, ZitoVault has refused to make any attempt to address Defendants' concerns both before the stay and after.   (App. 0035 (McManis 6/22/2016 Letter at 1).)   Given ZitoVault's position, were the Court to order ZitoVault to amend its contentions, the

new contentions would still likely fail to comply with Miscellaneous Order No. 62, necessitating further motion practice.  *Compare Comput. Acceleration*, 503 F. Supp. at 824-25 (finding this factor "weighe[d] heavily in favor of striking" an infringement contention where patentee ignored the "crystal clear" requirement to "provide a claim chart for each accused product," and noting that to hold otherwise would "discourage the voluntary exchange of information") *with H-W Tech.*, 2012 WL 3650597 at *7 (finding this factor weighed against striking all infringement contentions, in part because the patentee had "attempted to address any deficiencies through supplemental infringement contentions").

### C.  Absent Striking ZitoVault's Infringement Contentions, There Is a Significant Risk of Unfair Prejudice to Defendants

Defendants have already been unfairly prejudiced by ZitoVault's failure to provide adequate infringement contentions.  Defendants are still without the basic information needed to properly prepare their defenses.  *See Connectel*, 391 F. Supp. 2d at 528 ("Because of these deficiencies, [the alleged infringer] is unable to crystallize its non-infringement and invalidity theories, and the parties are hindered in identifying what claim terms need construction.").  As a result, Defendants are hindered in their ability to crystalize non-infringement and invalidity theories. ZitoVault's discovery deficiencies also impact claim construction: Defendants have already been forced to serve a preliminary identification of terms and proposed constructions without adequate notice of ZitoVault's infringement theories, and this prejudice will only be compounded as the parties attempt to narrow the scope of their dispute and brief their positions. Accordingly, Defendants have been and will continue to be prejudiced by ZitoVault's refusal to put Defendants on notice of its infringement theories in accordance with the rules.

20

**D.    ZitoVault's Failure to Provide Detailed Infringement Contentions Could Delay the Entire Case**

There also is potential for delay.  ZitoVault's failure to provide detailed infringement contentions could delay the case, particularly if ZitoVault were to provide particularized infringement theories at the eleventh hour (which would be completely improper).  ZitoVault's failure to provide detailed infringement contentions hinders Defendants' ability to meaningfully engage in claim construction and narrow the issues of the case.  Should ZitoVault provide more detailed infringement contentions later in the case, it may alter Defendants' non-infringement and invalidity theories, impact discovery, and may mean that a term previously thought unimportant takes on greater importance, requiring additional claim construction for that previously unidentified term.  *See Connectel*, 391 F. Supp. 2d at 528.  Any delay in claim construction or need for further claim construction could delay the remainder of the deadlines in this case, including expert reports and summary judgment motions.  This may ultimately cause the trial to be delayed.

**IV.    IN THE ALTERNATIVE, ZITOVAULT SHOULD NOT BE ALLOWED TO ADD, CLARIFY, OR OTHERWISE SUPPLEMENT ITS DEFICIENT INFRINGEMENT CONTENTIONS AT ANY POINT GOING FORWARD**

If the Court does not find that ZitoVault's deficient Infringement Contentions should be stricken, the Court should prevent ZitoVault from relying on any theories that were not expressly set forth in its Infringement Contentions or from alleging that any claim element is met by any feature, component, product, service, offering, or process ZitoVault did not expressly and specifically identify for that claim element in its contentions.  Such an order would ensure that ZitoVault cannot leave Defendants guessing regarding its infringement theories throughout fact discovery and claim construction and then, during expert discovery for example, surprise Defendants by relying on features, components, products, services, offerings, or processes not

21

expressly identified in ZitoVault's contentions or by stitching together the products/services that were referenced in its charts in a previously undisclosed combination.  ZitoVault has chosen to present only indecipherable allegations in its infringement contentions and refused Defendants' repeated requests to supplement those contentions, even after Defendants made their source code available for inspection, ZitoVault printed over one thousand pages from that source code, and Defendants produced tens of thousands of pages of technical documents.  The Court should at least hold ZitoVault to its strategic refusal to clarify its infringement contentions and limit ZitoVault to only those theories and features, components, products, services, offerings, or processes expressly disclosed on a limitation-by-limitation and product-by-product basis in accordance with this District's rules in its infringement contentions.[6]

Moreover, and as already discussed *supra* in Section III.B, giving ZitoVault another opportunity to amend its infringement contentions would be futile.  ZitoVault has had access enormous quantities of confidential, technical information produced by Defendants, yet has steadfastly refused to amend its infringement contentions.  This is, therefore, not a situation where further discovery or subpoenaing third parties may lead to "newly discovered accused instrumentalities [or] newly discovered bases for claiming infringement" that a party may use to show good cause to amend its contentions.  *See* Miscellaneous Order No. 62 ¶ 3-7.  Indeed, in an effort to litigate the case on the merits, Defendants offered ZitoVault multiple opportunities to amend its deficient infringement contentions without opposition, yet ZitoVault refused all of

---

[6]   Defendants note that this outcome is far less severe than ZitoVault's position in its Brief in Support of its Motion for Summary Judgment of No Invalidity.  There, ZitoVault argued that "IBM can offer no non-patent or printed publication evidence in support of these theories" because "patents or printed publications are the only evidence IBM used to support its [invalidity] contentions."  Dkt. 77 at 15.  ZitoVault, accordingly, would take this relief a step further and argue not only should it be precluded from introducing new theories or features, components, or processes into the case, but that it cannot even introduce new ***evidence*** regarding the same, such as witness testimony, source code, or technical documents.

those offers.  With claim construction underway and fact discovery in full swing, it is no longer "early in the litigation," and Defendants cannot wait for ZitoVault to "crystallize [its] theories of the case."  *See O2 Micro*, 467 F.3d 1355, 1364.  Instead, ZitoVault should be held to what little information it chose to disclose in its infringement contentions and not allowed to present any other theories or to rely on any feature, component, or process not expressly charted in its contentions.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants request that the Court strike ZitoVault's infringement contentions.  In the alternative, Defendants request that the Court issue an order precluding ZitoVault from relying on any theories or products/services that were not expressly set forth in its Infringement Contentions in accordance with this District's rules or from alleging that any claim element is met by any feature, component, product, service, offering, or process ZitoVault did not expressly and specifically identify for that claim element.

DATED:  July 20, 2017                                    Respectfully submitted,

                                                                  By:  */s/  Alexander Rudis* (with permission)

                                                                  John R. Emerson
                                                                  Texas State Bar No. 24002053
                                                                  Matthew P. Chiarizio
                                                                  Texas State Bar No. 24087294
                                                                  HAYNES and BOONE, LLP
                                                                  2323 Victory Avenue, Suite 700
                                                                  Dallas, TX 75219
                                                                  Tel: (214) 651-5328
                                                                  Fax: (214) 200-0884

                                                                  Charles K. Verhoeven
                                                                  California State Bar No. 170151
                                                                  (admitted *pro hac vice*)
                                                                  Melissa J. Baily
                                                                  California State Bar No. 237649
                                                                  (*pro hac vice* application to be filed)

23

Andrew M. Holmes
California State Bar No. 260475
(admitted *pro hac vice*)
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: (415) 875-6600
Fax: (415) 875-6700

Alexander Rudis
New York State Bar No. 4232591
(admitted *pro hac vice*)
John T. McKee
New York State Bar No. 4906566
(admitted *pro hac vice*)
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
51 Madison Ave.
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100

*Attorneys for Defendants International
Business Machines Corporation and SoftLayer
Technologies, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5.1(d) on this 20th day of July, 2017.

*/s/ Matthew P. Chiarizio*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendants has conferred with Plaintiff's counsel, Daniel Pearson and others,  about the subject matter of this motion on and before June 22, 2017 and that the parties were unable to resolve the dispute.  Thus, the matter is ripe for the Court's determination.

*/s/ Alexander Rudis* (with permission)